**Thomas C. WARD, Plaintiff,**

v.

**ALLEGHENY LUDLUM STEEL CORPORATION, a Division of Allegheny Ludlum Industries, Inc., et al., Defendants.**

**Civ. A. No. 74–547.**

United States District Court,
W. D. Pennsylvania.

July 1, 1975.

Robert N. Hackett, Pittsburgh, Pa., for plaintiff.

Robert A. King, Pittsburgh, Pa., for defendant Allegheny Ludlum Steel Corp.

David L. Gore, Pittsburgh, Pa., for defendant Local 1196, United Steelworkers.

Bernard Kleiman, Kleiman, Cornfield & Feldman, Chicago, Ill., for defendant United Steelworkers of Am.

## OPINION

GOURLEY, Senior District Judge.

This is a civil rights proceeding filed by the plaintiff and with jurisdiction existing pursuant to Title VII, 42 U.S.C. A., § 2000e as amended. The Court has afforded the parties a full and complete trial and has considered the briefs and arguments of counsel. Based thereon, it is the considered judgment of the Court that the defendant, Allegheny Ludlum Steel Corporation (hereinafter "Allegheny") violated plaintiff's rights under Title VII of the 1964 Civil Rights Act. It is also the considered judgment of the Court that Defendant, United Steelworkers of America, Local No. 1196 (hereinafter "Local") and the United Steelworkers of America, International (hereinafter "International") did not violate plaintiff's civil rights nor did they breach any duty of fair representation under Title VII of the 1964 Civil Rights Act.

The facts may be briefly stated. Thomas C. Ward (hereinafter "Ward") is the plaintiff in the instant case and has been employed by Allegheny since March 13, 1965. Ward is a member of the United Steelworkers of America, Local No. 1196 and the United Steelworkers of America, International. On January 1, 1968, Ward entered the apprentice program in the Hydraulic and Engine Repair Gang and attained the grade of

Class "A" Journeyman in May, 1972. After acquiring the status of Class "A" Journeyman, Ward was subsequently assigned to the Tandem Mill on the twenty week schedule in accordance with established procedures and the 1970 Collective Bargaining Agreement between Allegheny and the International.

The Hydraulic and Engine Repair Gang consists of approximately thirty Class "A" Journeymen. Four of them work in the Tandem Mill on the twenty week schedule and the balance work on a regular 8–4 shift each day on the six week schedule in the main plant. The Tandem Mill requires a Class "A" Journeyman to be on three different shifts because the Tandem Mill operates twenty-four hours a day.

The work groups at the Tandem Mill are selected by first asking for volunteers and then asking the junior Class "A" Journeymen to make up the requisite of the Class "A" Journeymen needed to man the Tandem Mill twenty-four hours a day.

In 1970, Ward became interested in and studied the beliefs of the Worldwide Church of God. In 1971, 1972, and 1973, Ward double tithed in accordance with his belief with the Church and was baptised in 1973. One of the basic tenets of the Worldwide Church of God is that Sabbath from sundown Friday to sundown Saturday is a day of rest when no renumerative work should be performed. In July, 1972, Ward was switched from the engine repair gang in the main plant which was on a six week schedule to the Tandem Mill at Brackenridge which was on a twenty week schedule. Suffice to say, a conflict soon arose between plaintiff's observance of his Sabbath and plaintiff's working in the Tandem Mill on Friday nights and Saturday.

During the months of July and August, 1972, Ward was able to find replacements during those days in which he observed his Sabbath. However, Ward was subsequently advised by his foreman that he should no longer contin-

ue the practice of finding his own replacements.

In 1972 and 1973 as a result of missing various turns at the Tandem Mill during Friday and Saturday, Ward received reprimands and suspensions. These reprimands and suspensions ultimately led Ward, on the threat of discharge, to accept a transfer from his position as a Class "A" Journeyman in the Engine Repair Gang to a lower paying job in plant protection. Defendant, Local, advised plaintiff that he was not required to sign the transfer agreement and if defendant, Allegheny, would discharge plaintiff that the union would immediately arbitrate his discharge. Moreover, defendant, International, sent plaintiff a letter subsequent to his transfer asking him to contact their representative if he was dissatisfied with his transfer. Plaintiff did not respond.

Under 42 U.S.C.A., 2000e, et seq. of the 1964 Civil Rights Act, the employer has the duty to reasonably accommodate an employee because of his religion; and where the employer does not, he (the employer) has the burden of showing that some undue hardship would result to his business. The 1972 amendment to the act clearly states that the burden to show undue hardship is on the employer, otherwise the employer must reasonably accommodate the employee.

■ Defendant, Allegheny, accommodated plaintiff's religious beliefs by giving him the choice of being fired or taking a position as a janitor making less money than he was as a Class "A" Journeyman. No effort or attempt was ever made to accomodate plaintiff's religious beliefs by permitting plaintiff to worship on his Sabbath and still maintain his present position or one comparable to it. The record reveals that plaintiff did not ask for a special schedule, but only sought to take his Sabbath off without pay. Ward was willing even to pay the overtime of those employees who took his place at the Tandem Mill. In fact, Ward was even willing to work on Sundays and other holidays for those employees of different religious beliefs so that he might be able to practice his own religious following. In view of the plaintiff's willingness to accommodate the defendant, Allegheny, in every and all possible ways, defendant's offer to plaintiff to accept a transfer to plant protection from his higher paying position as a Class "A" Journeyman or be fired, is not what Congress meant when they said that an employer must accommodate an employee because of his religious beliefs.

To avoid liability since it failed to adequately accommodate plaintiff's religious beliefs, defendant, Allegheny, must show that some undue hardship would have resulted to the conduct of its business. Just because Saturday Sabbath observance by one employee forces other employees to substitute during the weekend hours does not demonstrate an undue hardship on the employer's business. *Cummins v. Parker Seal Co.*, 516 F. 2d 544 (CA 6th Cir. 1975). The record is barren of any facts which would support a finding of an undue hardship on defendant, Allegheny. The Court can find no basis to support the finding of an economic burden from the payment of overtime or problems resulting from rescheduling let alone support the finding of an undue hardship. Although it might be said that the employer was inconvenienced by plaintiff's religious practices, such inconvenience could not be classified as an undue hardship.

■ Likewise, the Federal requirement that employers make reasonable accommodation in employment schedules and practices to employees religious observance does not violate the Establishment Clause *Cummins*, (supra). Finally, the Court can find no support in the record for defendant, Allegheny's, position that the Seniority provision of the Collective Bargaining Agreement prevented them from accommodating plaintiff.

■ Moreover, the record does not support plaintiff's claim against the de-

fendant, Local, and defendant, International. The record reveals that both defendants acted properly and in complete good faith in behalf of plaintiff. Neither defendants are responsible for any breach of duty to plaintiff nor have they in their official capacities violated any of plaintiff's civil rights.